IN THE SUPREME COURT OF IOWA

 No. 14 / 03-2066

 Filed March 10, 2006

KINGSWAY CATHEDRAL,

 Appellee,

vs.

IOWA DEPARTMENT OF TRANSPORTATION and CITY OF DES MOINES, IOWA,

 Appellants.

 Appeal from the Iowa District Court for Polk County, Donna L. Paulsen,
Judge.

 Interlocutory appeal of district court’s ruling denying defendants’
motions to dismiss petition for inverse condemnation. REVERSED AND CASE
REMANDED.

 Mark Godwin, Deputy City Attorney, Des Moines, for appellant City of
Des Moines.
 Stephen D. Hardy and Lisa R. Perdue of Grefe & Sidney, P.L.C.,
Des Moines, for appellant Iowa Department of Transportation.

 Theodore F. Sporer and Glenna K. Frank of Sporer & Ilic, P.C.,
Des Moines, for appellee.

LAVORATO, Chief Justice.
 The defendants, the Iowa Department of Transportation (IDOT) and the
City of Des Moines (City), sought interlocutory appeal from a district
court ruling denying their motions to dismiss a recasted petition filed by
the plaintiff, Kingsway Cathedral (Kingsway), for inverse condemnation.
Kingsway alleged that work on two construction projects over which the IDOT
and the City have jurisdiction and control produced vibrations that caused
damage to Kingsway’s church building resulting in a “taking” under the
Federal and Iowa Constitutions. We granted the appeal. Because the
recasted petition on its face demonstrates that there was no taking, we
reverse the district court ruling and remand for an order granting the
defendants’ motions to dismiss the petition.
 I.  Scope of Review.
 Iowa Rule of Civil Procedure 1.421(1)(f) governs motions to dismiss
for failure to state a claim upon which any relief may be granted. Our
review of a district court ruling on a motion to dismiss is for correction
of errors at law. Stotts v. Eveleth, 688 N.W.2d 803, 807 (Iowa 2004). A
motion to dismiss a petition should only be granted if there is no state of
facts conceivable under which a plaintiff might show a right of recovery.
Smith v. Smith, 513 N.W.2d 728, 730 (Iowa 1994). A motion to dismiss
admits the well-pleaded facts in the petition, but not the conclusions.
Bervid v. Iowa State Tax Comm’n, 247 Iowa 1333, 1339, 78 N.W.2d 812, 816
(1956).
 II.  Facts and Conclusion.
 On April 28, 2003, Kingsway filed a petition naming the IDOT and the
City as defendants. Following the district court’s ruling granting
Kingsway’s motion to amend, Kingsway filed a recasted petition.
 The recasted petition alleges the following facts that we take as true
for the purposes of determining whether the district court correctly
overruled the motions to dismiss. Kingsway owns a church building and
property located at 900 18th Street in Des Moines, Iowa. The IDOT is an
agency of the State of Iowa. The City is a municipal corporation in Polk
County, Iowa. The IDOT and the State of Iowa, by and through the IDOT,
have jurisdiction and control over the I-235 project in the vicinity of
Kingsway. The City and the State of Iowa, by and through the City, have
jurisdiction and control over the Martin Luther King Jr. Parkway project in
the vicinity of Kingsway.
 Work on the two projects produced vibrations that have caused
substantial damage to Kingsway’s building. Because of the damage, the City
notified Kingsway that the condition of the building was unsafe, creating a
hazard that threatened the health and safety of the public. The City
further notified Kingsway to vacate immediately all portions of the
building and that the building was to remain unoccupied unless repaired.
 The fair market value of the building before the damage was $580,000.
To restore the building would cost at least $3.9 million, and it is not
economically feasible to restore it. Kingsway has permanently lost the
substantial use and enjoyment of the building. The IDOT and the City have
refused Kingsway’s demand to either repair and restore the building or
condemn the property.
 The recasted petition concludes that the actions of the IDOT and the
City constitute a taking under the Fifth Amendment to the Federal
Constitution and article I, section 18 of the Iowa Constitution, a
conclusion that is not admitted by the filing of the motions to dismiss.
The recasted petition requests the court to enter an order requiring the
defendants to institute proceedings to condemn the church building.
 III.  Issue.
 The issue on appeal is whether the district court correctly overruled
the defendants’ motions to dismiss. That question turns on whether there
is any conceivable state of facts under which Kingsway might show a right
of recovery. Ordinarily, under our notice pleading rule, only a rare case
will not survive a motion to dismiss for failure to state a claim upon
which any relief can be granted. Smith, 513 N.W.2d at 730. However, here,
Kingsway has alleged enough facts to enable us to conclude that Kingsway
has failed to state such a claim.
 IV.  Analysis.
 The defendants contend, as they did in the district court, that
construction damages like Kingsway has suffered do not rise to the level of
constitutional takings. In support of this contention, the defendants
argue construction projects are temporary in nature, while the intrusions
that constitute takings are permanent in nature.
 The Fifth Amendment to the Federal Constitution provides in relevant
part that “[n]o person shall be . . . deprived of life, liberty, or
property, without due process of law; nor shall private property be taken
for public use, without just compensation.” The Fourteenth Amendment to
the Federal Constitution makes the Fifth Amendment applicable to the states
and their political subdivisions. Chicago, Burlington & Quincy R.R. v.
City of Chicago, 166 U.S. 226, 233-34, 17 S. Ct. 581, 583, 41 L. Ed. 979,
983-84 (1897).
 Article I, section 18 of the Iowa Constitution similarly provides in
relevant part that “[p]rivate property shall not be taken for public use
without just compensation.” Because of this similarity regarding takings,
we consider federal cases interpreting the federal provision persuasive in
our interpretation of the state provision. Harms v. City of Sibley, 702
N.W.2d 91, 97 (Iowa 2005). Such cases however are not binding on us
regarding our interpretation of the state provision. Id. Kingsway has not
asserted a basis to distinguish the protections afforded by the Iowa
Constitution from those afforded by the Federal Constitution under the
facts of this case. Nor have we found such a basis. For those reasons,
our analysis applies equally to both the state and federal grounds. See
id.
 Kingsway’s takings claim is grounded on inverse condemnation. Inverse
condemnation is “ ‘a generic description applicable to all actions in which
a property owner, in the absence of a formal condemnation proceeding, seeks
to recover from a governmental entity for the appropriation of his property
interest.’ ” Id. (citation omitted).
 We employ the following framework of analysis in determining whether a
taking has occurred:

 (1) Is there a constitutionally protected private property interest at
 stake? (2) Has this private property interest been “taken” by the
 government for public use? and (3) If the protected property interest
 has been taken, has just compensation been paid to the owner?

Bormann v. Bd. of Supervisors, 584 N.W.2d 309, 315 (Iowa 1998).
 We noted in Bormann that “[p]roperty for just compensation purposes
means ‘the group of rights inhering in the citizens’ relation to the
physical thing, as the right to possess, use and dispose of it.’ ” Id. at
315. We further noted that state law determines what constitutes a
property right. Id. The recasted petition alleges that Kingsway is the
owner of the building that was damaged. The petition therefore alleges a
property interest for just compensation purposes.
 The critical question, however, is whether that property interest has
been taken. A taking, we said in Bormann, “ ‘does not necessarily mean the
appropriation of the fee. It may be anything which substantially deprives
one of the use and enjoyment of his property or a portion thereof.’ ” Id.
at 321 (citation omitted).
 In Bormann, we recognized the difference between a regulatory taking
and one in which the government entity acting in an enterprise capacity has
appropriated private property:

 “The term ‘regulatory taking’ refers to situations in which the
 government exercises its ‘police powers’ to restrict the use of land
 or other forms of property. This is often accomplished through
 implementation of land use planning, zoning and building codes. In
 contrast, a governmental entity exercises its eminent domain power or
 acts in an ‘enterprise capacity, where it takes unto itself private
 resources and uses them for the common good.’ Where the private
 landowner will not sell the land, the government entity seeks
 condemnation of the property and pays a fair purchase price to be
 determined in court. On the other hand, an inverse condemnation claim
 is sought by a landowner when the government fails to seek a
 condemnation action in court.”

Id. at 317 (citation omitted). Here, the recasted petition alleges the
defendants were acting in an enterprise capacity when the damage to the
building occurred from the vibrations of the two projects.
 In either case—regulatory taking or enterprise capacity taking—the
government must compensate the owner “without any further inquiry into
additional factors” when the action of the governmental entity results in a
permanent physical invasion of the property. Id. at 316. Loretto v.
Teleprompter Manhattan CATV Corp. is an example of a regulatory taking.
458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982). In that case, a
state law provided that a landlord must permit a cable television company
to install its cable facilities upon the landlord’s property. The Court
held that a permanent physical invasion authorized by state law constituted
a taking. Id. at 421, 432 n.9, 102 S. Ct. at 3168, 3174 n.9, 73 L. Ed. 2d
at 873, 880 n.9. United States v. Causby is an example of an enterprise
capacity taking. 328 U.S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946). In
Causby, the federal government permitted its airplanes to fly so low over
the plaintiffs’ land, which adjoined a municipal airport leased by the
federal government, as to deprive the plaintiffs of the use and enjoyment
of their land for the purpose of raising chickens. The Court held that
such action constituted a taking. Id. at 265-67, 66 S. Ct. at 1068, 90 L.
Ed. at 1212-13.
 “If some physical invasion is in fact demonstrated, there is no de
minimis rule.” Fitzgarrald v. City of Iowa City, 492 N.W.2d 659, 664 (Iowa
1992); see also Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015, 112 S.
Ct. 2886, 2893, 120 L. Ed. 2d 798, 812 (1992) (“[N]o matter how minute the
intrusion, and no matter how weighty the public purpose behind it, we have
required compensation [for physical invasion].”). What must be compensated
is diminishment of the value of the land. Fitzgerald, 492 N.W.2d at 663.
Such takings are referred to as “per se” takings. Bormann, 584 N.W.2d at
316.
 Whether a taking has occurred is determined by the character of the
invasion and not by the amount of damages. See, e.g., Schaller v. State,
537 N.W.2d 738, 743 (Iowa 1995). For example, some acts done by government
agencies that could be deemed nuisances and which affected but did not
destroy or prevent all use of the affected property have been held to be
takings under the Fifth Amendment to the Federal Constitution. The
continuance or permanency of the government action sufficient to support
the finding of a creation of a servitude has been the determining factor
for a finding of a taking. See Causby, 328 U.S. at 265-67, 66 S. Ct. at
1068, 90 L. Ed. at 1212-13 (holding that repeated flights of military
planes so low as to destroy use of land for chicken farm constituted a
servitude on the land requiring just compensation and diminution in value
of property was the basis for compensation); Portsmouth Harbor Land & Hotel
Co. v. United States, 260 U.S. 327, 329-30, 43 S. Ct. 135, 136-37, 67 L.
Ed. 287, 289-90 (1922) (holding that firing, and imminent threat of firing,
of navy coastal guns over plaintiff’s property imposed a servitude upon the
plaintiff’s land and thus amounted to a taking of some interest for public
use). A servitude has been defined as “a right to the limited use of a
piece of land or other immovable property without the possession of it.”
Black’s Law Dictionary 1400 (8th ed. 2004). Servitudes include, among
other things, easements. Id.; see Causby, 328 U.S. at 265-67, 66 S. Ct. at
1068, 90 L. Ed. at 1212-13; Portsmouth Harbor, 260 U.S. at 329-30, 43 S.
Ct. at 136-37, 67 L. Ed. at 289-90.
 Absence of such continuance or permanency leaves the property owner
with nothing but an action in tort. Sullivan v. Massachusetts, 142 N.E.2d
347, 352-53 (Mass. 1957) (holding that damages to petitioners’ house
resulting from rock blasting in construction of aqueduct for metropolitan
water district provided no eminent domain remedy for taking and was nothing
more than a tort). In rejecting the inverse condemnation claim, the court
in Sullivan said:

 Even though here the risk of injury by blasting to some property
 was necessary to the improvement and the possibility of injury to some
 property located on the rock stratum might have been foreseen, there
 was no deliberate act in respect of the petitioners’ property, and no
 basis for inferring an actual intention to withdraw the property from
 their use for any length of time. There was no act with known result
 from which, and the repetition of like acts thereafter, an implication
 of such intention could arise. There is no basis for a claim under
 [the state constitutional takings provision] that a servitude has been
 imposed on the petitioners’ land.

Id. at 353 (emphasis added) (citation omitted) (footnote omitted); accord
Ohio ex rel. Fejes v. City of Akron, 213 N.E.2d 353, 354 (Ohio 1966) (trial
court sustained a demurrer (motion to dismiss) to a petition in which the
plaintiff alleged that earth tremors caused by use of heavy equipment by a
municipality in nearby construction work damaged her residence and thereby
constituted a taking; upholding ruling on appeal, court noted that it was
apparent from the petition that “there was no direct or immediate physical
contact with relator’s property in the construction work, but that
vibrations of temporary duration originating off the property incident to
the construction were responsible for the claimed damages”); Arvo Van
Alstyne, Inverse Condemnation: Unintended Physical Damage, 20 Hastings
L.J. 431, 478 (1969) (“In jurisdictions that recognize inverse liability
only for a ‘taking,’ structural damage as the result of vibrations from
heavy equipment (e.g., a pile driver) or from shock waves caused by
blasting, ordinarily is held to be noncompensable.” (Footnotes omitted.));
cf. Kelley v. Story County Sheriff, 611 N.W.2d 475, 477, 482 (Iowa 2000)
(holding that damage to private property that occurred when officers made
forcible entry in order to execute an arrest warrant was in the nature of a
tort rather than a permanent deprivation of property or creation of a
permanent property interest and for that reason was not a taking).
 A better understanding of the necessity for permanency of the invasion
is found in this discussion of “consequential damages” in Nichols on
Eminent Domain:

 “Consequential damage” has become a term of art in addressing an
 issue rather than a term of accurate definition. Whatever occurs to a
 remainder after a taking that factually would not have been likely to
 occur but for the taking, is logically in consequence of the taking.
 Such a factual linkage does not always provide the right to a damage
 claim against the taking authority. The term “consequential damage”
 has justly been described as ambiguous, irrelevant, equivocal and a
 deterrent to any hope of a clear understanding of the issue at hand.
 It is often used as an exclusionary term, particularly in cases where
 flood follows a “taking” upon completion of the project. A clearer
 understanding of the term is found by analyzing these “flooding”
 cases.
 When the flooding results from a sovereign project, the flooding
 has been held compensable if there is “a permanent condition of
 continual overflow” or a permanent “liability to intermittent but
 inevitably recurring overflows.” This is true even if substantial
 enjoyment remains in the owner, in which case there is a “partial
 instead of a total divesting.”
 If the invasion does not reach this level and is “but a
 temporary invasion of the land” and merely “the consequential result
 of or incidental to” the sovereign activities, the invasion is
 recoverable only upon principles of tort, not as a Fifth Amendment
 taking. This is the only view where “consequential damages are
 generally not compensable.”

4A Julius L. Sackman, Nichols on Eminent Domain § 14.01[2], at 14-4 to 14-7
(rev. 3d ed. 2005) (footnotes omitted); accord Dugan v. Rank, 372 U.S. 609,
625-26, 83 S. Ct. 999, 1009, 10 L. Ed. 2d 15, 26-27 (1963) (characterizing
government’s action of subordinating rights of riparian owners to
beneficial use of waters of a river to uses of a water reclamation project,
whenever the government saw fit, as an imposition of such a servitude as
constituting a taking); Phelps v. Bd. of Supervisors, 211 N.W.2d 274, 276
(Iowa 1973) (holding that the character of the invasion at issue was the
increased flooding to plaintiff’s land caused by a road construction
project which flooding was certain and inevitable to occur).
 Here, the recasted petition alleges that the damage to the building
was caused by vibrations from the demolition and construction activities.
We agree with the defendants that the only reasonable inference from this
allegation is that the damage was done because of vibrations that were of a
temporary nature. Obviously, the construction projects have a beginning
and an end. Unlike the invasion from continual overflow in the flooding
cases, the vibrations will not reoccur once the construction activities
have ceased. Therefore, no servitude results from these activities. In
these circumstances, any damages resulting from the construction activities
is nothing more than “ ‘the consequential result of or incidental to’ ” the
defendants’ activities. See 4A Sackman, Nichols on Eminent Domain
§ 14.01[2], at 14-6 (citation omitted). Therefore, Kingsway’s recovery, if
any, must be based on tort and not on a constitutional taking.
 V.  Disposition.
 The recasted petition on its face demonstrates that Kingsway’s
private property interest has not been taken for public use. Therefore, we
conclude there is no state of facts conceivable under which Kingsway might
show a right of recovery based on a takings claim. Rather, Kingsway’s
recovery, if any, must be based on tort. Consequently, the district court
erred in overruling the defendants’ motions to dismiss. We therefore
reverse and remand the case to the district court for an order granting the
defendants’ motions to dismiss.
 REVERSED AND CASE REMANDED.
 [pic]