# IN THE COURT OF APPEALS OF IOWA

No. 3-1133 / 12-1361
Filed February 19, 2014

**JOSE RUESGA,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

      Appeal from the Iowa District Court for Lee (North) County, John G. Linn,

Judge.


      Ruesga appeals from the district court order dismissing his application for

postconviction relief. **AFFIRMED.**


      Jose Ruesgo, Fort Madison, pro se appellant.

      Thomas J. Miller, Attorney General, and Forrest Guddall, Assistant

Attorney General, for appellee.


      Considered by Doyle, P.J., Bower, J., and Miller, S.J.*

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MILLER, S.J.**

Jose Ruesga is an inmate at the Iowa State Penitentiary at Fort Madison. In 2012 he was charged with violating an institutional rule. In a prison disciplinary proceeding, Ruesga was found to have violated the rule and received fifteen days of disciplinary detention as the only sanction imposed. His appeal and supplemental appeal to the warden were denied. Ruesga then filed an application for postconviction relief with the district court. In his application Ruesga raised as grounds for relief claims that the "report" against him had been brought in retaliation for him "giving a statement against an officer being investigated," and that the conduct he had been accused of did not in fact constitute a violation of the institutional rule in question. His request for relief included a request for "dismissal of report and expunge[ment] from file."

The State filed a motion to dismiss, pointing out that the only sanction imposed had been fifteen days of disciplinary detention and Ruesga had not lost any "earned time." The State asserted that the sanction thus involved no substantial deprivation of a liberty or property interest and that under such circumstances Ruesga's application did not state a claim cognizable in an action for postconviction relief.

On July 5, 2012, Ruesga filed a response to the State's motion. He alleged he was serving a life sentence and argued that his having been found to have violated an institutional rule would "impact my application for commutation." Ruesga cited the June 25, 2012 decision in *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2464, 183 L. Ed. 2d 407, 424 (2012), for the proposition that

mandatory life imprisonment without parole for persons who were under the age of eighteen at the time of their crimes constituted unconstitutional cruel and unusual punishment. He asserted he had been incarcerated for twenty years, and had not had but was entitled to "a hearing to consider mitigating circumstances" concerning his "possibility of rehabilitation versus life imprisonment" and a possible commutation of his sentence. Ruesga argued that the erroneous finding he had violated an institutional rule would have an impact at such a hearing. Although Ruesga does not expressly so state, we read these statements in his response as an assertion that he was sentenced to a mandatory term of life imprisonment without possibility of parole for a crime committed while he was under eighteen years of age.

The district court sustained the State's motion to dismiss. It noted that Ruesga had lost no "earned time." It concluded that the sanction of fifteen days disciplinary detention did not result in any substantial deprivation of a liberty or property interest. In support of its conclusion the court cited Iowa Code section 822.2(1)(f) (2011); *Tabor v. State*, 519 N.W.2d 378, 380 (Iowa 1994); and *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997).

Ruesga appeals. He asserts he was less than eighteen years of age at the time of the crime for which he was sentenced to a mandatory term of life imprisonment without the possibility of parole—an unconstitutional sentence under *Miller v. Alabama*—and he is thus entitled to a "mitigating circumstances hearing" as defined in that case. *See Miller*, 567 U.S. at ___, 132 S. Ct. at 2474, 183 L. Ed. 2d at 430. He contends that the finding he violated an institutional

rule results in a substantial deprivation of a liberty interest because it will have an impact at such a hearing. This contention implicitly relies on the underlying contention, expressly made in his application for postconviction relief, that the finding of a rule violation was erroneous.

As a preliminary matter, we note that in his brief Ruesga asserts that his July 5, 2012 resistance to the State's motion to dismiss was "never ruled on." If this were true, Ruesga has arguably failed to preserve error, as the issue he raises on appeal is essentially the same as an issue not expressly stated in his application for postconviction relief but made clear in his response to the State's motion to dismiss. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (noting that when a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal). We do note, however, that in its order the district court expressly mentioned that Ruesga had "filed a response to the motion on July 5, 2012." It thus seems clear that the court was aware of and considered Ruesga's resistance in sustaining the State's motion. *See id.* at 864 ("If the court's ruling indicates that the court considered the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved.").

The State asserts that Ruesga has failed to preserve error on the issue he presents on appeal. It points out he did not raise his present contention—that his erroneous prison discipline will affect his sentence because it will have an impact at his resentencing hearing—in the administrative proceeding. It further asserts

the issue was not "cited in his application for postconviction relief." The State cites and quotes *Miller v. Iowa District Court*, 603 N.W.2d 86, 88 (Iowa 1999), and cites other cases, for the proposition that "[b]efore seeking postconviction relief concerning action taken by a prison disciplinary committee, the prisoner must first exhaust his administrative remedies by raising the basis for the requested relief in the administrative process." The next question is how to apply this well-established principle to the particular facts of this case.

The warden's response to Ruesga's appeal, attached to and a part of Ruesga's application for postconviction relief, praises "the positive progress you've demonstrated during your incarceration." It acknowledges that Ruesga "[d]isagree[s] with the decision" and states that the warden does not "accept [Ruesga's] contention" that Ruesga's conduct did not violate the rule in question. The warden's response to Ruesga's supplemental appeal, similarly attached to and a part of Ruesga's application, indicates that Ruesga "[d]en[ies] the violations," "disagree[s] with the decision," and contends his conduct did not violate the rule. The response states that the warden "disagrees with [Ruesga's] interpretation" of the rule, and the warden concludes Ruesga's conduct did "indeed meet the criteria of the charge." We therefore conclude that Ruesga did exhaust administrative remedies concerning his underlying claim that he was erroneously found to have violated an institutional rule.

In his application for postconviction relief, however, and on appeal, Ruesga goes somewhat further than merely contending his conduct did not violate the institutional rule. He contends that the allegedly erroneous finding of

a rule violation implicates a liberty interest because it will have an impact on the outcome of the resentencing hearing to which he is entitled to consider "mitigating circumstances." The State's claim that Ruesga has not preserved error must of necessity at least in part go to this further contention.

If the administrative process had been resolved in Ruesga's favor with a determination that his conduct did not violate the institutional rule in question, Ruesga would have had no grounds on which to file an application for postconviction relief raising this contention. Otherwise stated, his claim that the erroneous administrative finding he violated an institutional rule will have an impact on his resentencing hearing was not ripe until the conclusion of the administrative process. We therefore do not agree with the State's contention that Ruesga has failed to preserve error on the issue he presents.

The State's pre-answer motion to dismiss identifies the question it raises as whether Ruesga's application for postconviction relief "states a claim when the only punishment is only 15 days of disciplinary detention." The motion is thus one to dismiss for "[f]ailure to state a claim upon which any relief may be granted." *See* Iowa R. Civ. P. 1.421(1)(f).

> A motion to dismiss [for failure to state a claim upon which any relief may be granted] is properly granted only if a plaintiff's petition on its face shows no right of recovery under any state of facts. A motion to dismiss is properly granted only when there exists no conceivable set of facts entitling the non-moving party to relief. Under notice pleading, nearly every case will survive a motion to dismiss. The petition need not allege ultimate facts that support each element of the cause of action. The petition, however, must contain factual allegations that give the defendant fair notice of the claim asserted so the defendant can adequately respond to the petition. A petition complies with the fair notice requirement if it informs the defendant of the incident giving rise to

the claim and of the claim's general nature. We view the plaintiff's allegation in the light most favorable to the plaintiff with doubts resolved in that party's failure.

*Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004). "A motion to dismiss admits the well-pleaded facts in the petition, but not the conclusions." *Kingsway Cathedral v. Dep't of Transp.*, 711 N.W.2d 6, 8 (Iowa 2006).

Our review of a district court ruling on a motion to dismiss for failure to state a claim upon which any relief may be granted is for correction of errors of law. *Id.* at 7. However, when violation of a constitutional right is raised, we make a de novo review of the evidence relevant to the constitutional issue. *See, e.g.*, *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 517 (Iowa 2011) (holding that although review of a certiorari action is for correction of errors at law, the evidence relevant to an allegation of aviolation of a constitutional right is reviewed de novo); *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 872 (Iowa 1978) (same).

We conclude that under our notice pleading, in ruling on the motion to dismiss, the district court was required to accept as fact that Ruesga was serving mandatory life imprisonment without parole for a crime committed under the age of eighteen (and was thus entitled to a resentencing hearing to consider "mitigating circumstances" and the possible commutation of his sentence), and that the prison officials erroneously interpreted and applied the rule he was charged with violating, resulting in an erroneous finding that he had violated the rule in question. The question that remains concerns Ruesga's conclusion that a

liberty interest is implicated because the finding will necessarily have an impact on the outcome of his resentencing hearing.

No person shall be deprived of liberty without due process of law. U.S. Const. amend. V; Iowa Const. art. I, § 9. In his resistance to the State's motion to dismiss, Ruesga cited *Tabor*, 519 N.W.2d at 378. In that case Tabor, an inmate of the Iowa State Penitentiary, was disciplined for violating an institutional rule. *Tabor*, 519 N.W.2d at 379. The district court denied postconviction relief. *Id.* On appeal our supreme court identified two situations in which postconviction relief procedures established in Iowa Code chapter 822 may be utilized to review prison disciplinary proceedings. *Id.* at 380. Citing Iowa Code section 822.2(6) (1993), the court identified the first as "when '[t]he persons' reduction of sentence pursuant to [statutes allowing an inmate to earn time toward early release] has been unlawfully forfeited.'" *Id.* Citing *Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984), the court identified the second as the situation in which "the particular discipline imposed, although not resulting in forfeiture of a sentence reduction under those statutes, otherwise results in a substantial deprivation of the applicant's liberty [or] property interest." *Id.* The court affirmed the denial of relief, holding that the only discipline imposed, a reprimand, met neither of the two described situations. *Id.*

About seven months later the United States Supreme Court decided *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Conner, an inmate serving thirty years to life in a Hawaii prison, was charged with "high misconduct" and was also charged with "low moderate misconduct" for

violating various institutional rules. *Sandin*, 515 U.S. at 474-75, 115 S. Ct. at 2295-96, 132 L. Ed. 2d at 424. An institutional adjustment committee determined he was guilty of the charged misconduct, and Conner was disciplined by the imposition of thirty days of disciplinary segregation for the high misconduct and four hours of disciplinary segregation for each of the two other misconducts. *Id.* at 475-76, 115 S. Ct. at 2296, 132 L. Ed. 2d at 424. Conner sought administrative review, resulting in a determination the high misconduct charge was unsupported and the expungement of his records as to that charge. *Id.* at 476, 115 S. Ct. at 2296, 132 L. Ed. 2d at 424-25. Conner subsequently sued, claiming his rights to due process of law had been violated by the disciplinary committee denying his request to present witnesses at the disciplinary hearing. *Id.* at 476, 115 S. Ct. at 2296, 132 L. Ed. 2d at 425.

In *Sandin*, the U.S. district court granted the prison officials summary judgment, the Court of Appeals for the Ninth Circuit reversed, and the Supreme Court granted certiorari. *Id.* at 476-77, 115 S. Ct. at 2297, 132 L. Ed. 2d at 425. The Supreme Court reversed the decision of the Ninth Circuit. *Id.* at 488, 115 S. Ct. at 2296-97, 132 L. Ed. 2d at 432. It identified two instances in which liberty interests of prisoners are implicated, "when a restraint imposes 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" and "when a restraint 'will inevitably affect the duration of [the inmate's] sentence.'" *See Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 494-95 (Iowa 2010) (citing and quoting *Sandin*, 515 U.S. at 484, 487, 115 S. Ct. 2300, 2302, 132 L. Ed. 2d 418, 430-31.

We view the second situation identified in *Tabor,* a situation in which "the particular discipline imposed, although not resulting in forfeiture of a sentence reduction under the statutes, otherwise results in a substantial deprivation of the applicant's liberty . . . interest," 519 N.W.2d at 380, as essentially the same as the first instance described in *Sandin*—"when a restraint imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 487, 115 S. Ct. at 2302, 132 L. Ed. 2d at 430-31. *Sandin* rejected the idea that thirty days of disciplinary segregation presented such a deprivation as might create a liberty interest under this test. *Id.* We similarly reject the idea that Ruesga's fifteen days of disciplinary detention created a liberty interest subject to due process protection under this test.

We view the second instance identified in *Sandin*—"when a restraint 'will inevitably affect the duration of [the inmate's] sentence'"—as encompassing the first situation identified in *Tabor*—"when '[t]he person's reduction of sentence pursuant to [statutes allowing an inmate to earn time toward early release] has been unlawfully forfeited.'" *See Sandin*, 515 U.S. at 484, 487, 115 S. Ct. at 2300, 2302, 132 L. Ed. 2d at 430-31; *Tabor*, 519 N.W.2d at 380.

Iowa's statutes providing for earned time credits toward early release create a liberty interest in any credits an inmate has accrued. *Sanford v. Manternach*, 601 N.W.2d 360, 364 (Iowa 1999). A liberty interest also exists in the right to accrue such credits. *Holm v. Iowa Dist. Ct.*, 767 N.W.2d 409, 417-18 (Iowa 2009). Minimal requirements of procedural due process must therefore be observed before an inmate may be deprived of either of these rights. *See, e.g.,*

*Sanford*, 601 N.W.2d at 464 (citing and quoting cases holding that an inmate has a constitutionally protected liberty interest in earned credits, and that minimum requirements of procedural due process must be observed before earned time can be forfeited). The discipline imposed in Ruesga's case did not, however, affect either earned credits or the right to accrue credits. We are left with the question of whether Ruesga's conclusion that his discipline—fifteen days of disciplinary detention—will necessarily impact his application for resentencing in his anticipated resentencing hearing. Otherwise stated, in the terms expressed in *Sandin*, will that discipline "inevitably affect the duration of [Ruesga's] sentence." *See Sandin*, 515 U.S. at 484, 487, 115 S. Ct. at 2300, 2302, 132 L. Ed. 2d at 430-31. For the reasons that follow, we cannot reach such a conclusion under any set of facts provable under the facts alleged in Ruesga's application.

"Inevitable" means "incapable of being avoided or evaded," Webster's New Collegiate Dictionary 584 (1980), or "certain to happen" Webster's New Universal Unabridged Dictionary 936 (Deluxe 2nd Ed. 1979). In *Tabor*, an inmate at the Iowa State Penitentiary received a reprimand for being at an improper location. 519 N.W.2d at 380. He asserted that the discipline would affect his right to discretionary reduction of a Wyoming sentence that he was also serving, resulting in a substantial deprivation of a liberty interest. *Id.* Our supreme court affirmed the denial of relief, holding that "deprivations for which postconviction relief may be cognizable . . . do not include the collateral consequences of sanctions imposed by Iowa authorities on prisoner's sentences

in other states." *Id.* Although Ruesga's request for relief is somewhat different, in that it relates to an opportunity for reduction of an Iowa sentence rather than the sentence of another state, it is also somewhat similar in that it involves hypothetical "collateral consequences" of discipline rather than direct consequences of discipline.

In *Sandin*, the Supreme Court held that inmate Conner's situation did not present a case in which the State's action in disciplining him would inevitably affect the duration of his sentence as state law did not "require[ ] the parole board to deny parole in the face of a misconduct record or to grant parole in its absence . . . even though misconduct is by regulation a relevant consideration." 515 U.S. at 487, 115 S. Ct. at 2302, 132 L. Ed. 2d at 431-32. This analysis may reasonably be viewed as indicating that when discretion is involved in imposing or modifying a sentence, factors such as a record of discipline that may play some small role but are not determinative do not implicate a liberty interest.

Our district court has broad discretion in sentencing, provided any sentence imposed is within constitutional boundaries and statutory limits. *State v. Null*, 836 N.W.2d 41, 58 (Iowa 2013) (stating the supreme court has a constitutional obligation to ensure sentences remain within constitutional boundaries); *State v. Dailey*, 774 N.W.2d 316, 319 (Iowa Ct. App. 2009) (stating Iowa Code "section 901.5 vests the district court with broad discretion in imposing sentences within statutory limits").

In *Miller v. Alabama*, the Supreme Court held that a sentence of mandatory life imprisonment without possibility of parole for a crime committed

while a juvenile violates the prohibition of cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. Citing and quoting its previous cases that described numerous "gaps between juveniles and adults," the court stated that "children are constitutionally different from adults for purposes of sentencing." *Id.* at ____, 132 S. Ct. at 2464, 183 L. Ed. 2d at 418. The court pointed out its previous insistence "that a sentencer had the ability to consider the 'mitigating qualities of youth,'" and that mandatory life-without-parole sentences preclude sentencers "from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at ___, 132 S. Ct. at 2467, 183 L. Ed. 2d at 422.

Recent Iowa cases are to the same effect. *See, e.g.*, *State v. Ragland*, 836 N.W.2d 107, 121 (Iowa 2013) ("In light of our increased understanding of the decision making of youths, the sentencing process must be tailored to account in a meaningful way for the attributes of juveniles that are distinct from adult conduct."); *State v. Pearson*, 836 N.W.2d 88, 97 (Iowa 2013) (stating, in vacating a juvenile's lengthy sentence and remanding, that "a juvenile's culpability is lessened because the juvenile is cognitively underdeveloped relative to a fully-developed adult," and holding that in resentencing Pearson such "lessened culpability is a mitigating factor that the district court must recognize and consider"); *Null*, 836 N.W.2d at 74 (stating, in vacating a juvenile's lengthy sentence and remanding, that "the district court must recognize that because 'children are constitutionally different from adults,' they ordinarily cannot be held

to the same standard of culpability as adults in criminal sentencing," and "[t]he constitutional difference arises from a juvenile's lack of maturity, underdeveloped sense of responsibility, vulnerability to peer pressure, and the less fixed nature of the juvenile's character").

*Miller*, and the Iowa cases cited above, thus strongly suggest that in sentencing or resentencing someone for a crime committed while a juvenile, while other factors may be considered the strong emphasis is to be placed on the age of the offender at the time of the crime and the characteristics and circumstances attending that age.

Given the foregoing facts and law, can we accept Ruesga's conclusion that his one incident of prison misconduct will necessarily affect the outcome of his anticipated resentencing hearing, and thus "inevitably affect the duration of [his] sentence"?  In *Sandin*, in reversing the Ninth Circuit and thus reinstating the district court's grant of summary judgment, the Supreme Court held that Conner's situation did not "present a case where the State's action will inevitably affect the duration of his sentence."  515 U.S. at 487, 115 S. Ct. at 2302, 132 L. Ed. 2d at 431.  It noted that Hawaii law did not require the parole board to deny parole because of the misconduct or grant parole in its absence.  *Id.* at 487, 115 S. Ct. at 2302, 132 L. Ed. 2d at 431-32.  The court noted that parole decisions rest on many considerations, stated that "[t]he chance that a finding of misconduct will affect the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause," and held that Conner therefore did not have a

protected liberty interest that would entitle him to procedural protections such as the asserted right to present witnesses at the disciplinary hearing.

Ruesga has apparently been incarcerated for twenty years and the warden praises his demonstrated progress. The misconduct and disciplinary proceeding is entirely collateral to Ruesga's criminal case. At any resentencing that might occur, the district court would have broad discretion. The primary focus at any resentencing hearing will be the "mitigating qualities of youth," and Ruesga's age and attending characteristics and circumstances at the time of his crime. As noted above, "inevitable" means "certain to happen." We conclude that under these facts and the applicable law, the chance Ruesga's discipline would affect the result of any resentencing in such a manner as to "inevitably affect the duration of [Ruesga's] sentence" is based on nothing but speculation and conjecture and is thus too attenuated to give rise to a due-process-protected liberty interest. We therefore affirm the district court's dismissal of Ruesga's application.

**AFFIRMED.**