# IN THE COURT OF APPEALS OF IOWA

No. 19-1131
Filed October 7, 2020

**BRODERICK FAMILY, L.P.,**
    Plaintiff-Appellant,

**vs.**

**CITY OF WAUKEE, IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dallas County, Terry Rickers, Judge.

Broderick Family, L.P. appeals an order granting the City of Waukee's motion for summary judgment. **AFFIRMED.**

Daniel L. Manning, Sr. and Daniel M. Manning, Jr. of Lillis O'Malley Olson Manning Pose Templeman LLP, Des Moines, for appellant.

James E. Nervig and Steven P. Brick of Brick Gentry P.C., West Des Moines, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

Broderick Family L.P. (Broderick) sued the City of Waukee, Iowa (Waukee). Broderick alleges Waukee's actions created a servitude and uneconomical remnant. But the district court concluded that, so far, Waukee's acts have not amounted to an unconstitutional taking. So the court granted summary judgment in Waukee's favor. Broderick now appeals. We affirm.

## I. Factual Summary

Broderick owns a parcel of property—approximately 137 acres—within Waukee's city limits. Waukee owns land west of Broderick's property. Waukee is developing that land for a city park and public high school. Waukee wanted to acquire a western portion—about five acres—of Broderick's land. Waukee's plan is to use the land for infrastructure adjacent to the new high school. But the parties could not reach an agreement for purchase of the land. So Waukee initiated condemnation proceedings.[1]

In Iowa, the procedure for condemnation is set by Iowa Code chapter 6B. Section 6B.3(1) prescribes the required contents of an application for condemnation. Among other things, an application must include a "plat showing the location of the . . . property sought to be condemned." *See* Iowa Code § 6B.3(1)(b).

So, when Waukee submitted its condemnation application, it attached plats showing the five or so acres it sought to acquire from Broderick. In addition to the

---

[1] Condemnation is the process by which a government entity declares certain property for public use in exchange for reasonable compensation to the property owner. *Condemnation*, *Black's Law Dictionary* (11th ed. 2019); *see also* Iowa Code § 6A.1 (2018).

required information, though, the acquisition plats depicted a potential right-of-way to extend Douglas Parkway across the entirety of Broderick's property. But neither the right-of-way nor the additional land it could require—approximately nine and one-half additional acres—were otherwise addressed in Waukee's condemnation application. Rather, the application only sought to acquire the five acres (more or less) needed for the school project.

Broderick then sued Waukee under a theory of inverse condemnation. Broderick claims that Waukee's drawings "earmarked" the additional nine and one-half acres as "the location where" Waukee "intends to construct" an extension of Douglas Parkway. Broderick alleges that despite this, Waukee "has no intention of acquiring that right-of-way"—the nine and one-half acres—through condemnation or otherwise. As a result, Broderick claims, Waukee has created a servitude and uneconomical remnant.

Waukee moved for summary judgment. It pointed out that the additional nine and one-half acres was only a "possible location of a *future* extension of Douglas Parkway." And Waukee has "made no final decision and taken no final action either to extend or not to extend any portion of Douglas Parkway" across the entirety of Broderick's land. So, Waukee argued, there has been no taking.

The district court agreed. The court stated it could not find that Waukee "irrevocably committed to constructing an extension of Douglas Parkway through [Broderick's] land." And the court found "no evidence in the record to support [Broderick's] contention that a 'taking' has occurred." So the court granted Waukee's motion. Broderick now appeals.

## II. Standard of Review

"We review a district court's summary judgment ruling 'for correction of errors at law.'" *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018) (quoting *Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 199 (Iowa 2007)). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## III. Analysis

Broderick raises two theories: inverse condemnation and uneconomical remnant. We address each in turn.

### A. Inverse Condemnation

Governments may not take private property without paying just compensation. This right is guaranteed by the Iowa Constitution, which provides that "[p]rivate property shall not be taken for public use without just compensation first being made." Iowa Const. art. I, § 18. Similarly, the Fifth Amendment to the Constitution of the United States provides, "private property [shall not] be taken for public use, without just compensation."[2]

A property owner can pursue a claim of "inverse condemnation" when a government body—such as a city—takes all or part of the owner's property without starting formal condemnation proceedings. *See K & W Elec., Inc. v. State*, 712 N.W.2d 107, 115 (Iowa 2006); *Molo Oil Co. v. City Of Dubuque*, 692 N.W.2d 686,

---

[2] "Because of this similarity regarding takings, we consider federal cases interpreting the federal provision persuasive in our interpretation of the state provision." *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 9 (Iowa 2006).

692 (Iowa 2005). We use a three-part framework to evaluate claims of inverse condemnation: "(1) Is there a constitutionally protected private property interest at stake?[;] (2) Has this private property interest been 'taken' by the government for public use?[;] and (3) If the protected property interest has been taken, has just compensation been paid to the owner?" *Kingsway Cathedral*, 711 N.W.2d at 9 (citation omitted).

There is no dispute as to elements one and three. Because Broderick owns the nine and one-half acres at issue, Broderick clearly has a constitutionally protected private property interest in the land. *See id.* Likewise, it is undisputed Waukee has not compensated Broderick for the nine and one-half acres.

So the critical question is element two, whether Broderick's property interest in the nine and one-half acres has been "taken." *See id.* A taking "may be anything which substantially deprives one of the use and enjoyment of [the] property or a portion thereof." *Phelps v. Bd. of Supervisors of Muscatine Cnty.*, 211 N.W.2d 274, 276 (Iowa 1973). A servitude—"a right to the limited use of a piece of land . . . without the possession of it," such as a right-of-way—can amount to a taking. *Servitude*, *Black's Law Dictionary* ("Servitudes include easements . . . ."); *Easement*, *Black's Law Dictionary* (recognizing a right-of-way is a type of easement). It depends on the "*continuance* or *permanency* of the government action" at issue. *Kingsway Cathedral*, 711 N.W.2d at 10.

Broderick claims Waukee has created a servitude—and has committed a taking—by "attempt[ing] to reserve nearly [ten] acres of Broderick's private property for [a] public right-of-way without paying for it." Broderick relies on three pieces of evidence. First, Broderick points to the already-mentioned acquisition

plats,[3] which label a strip of land as "150' Proposed ROW" and "NE Douglas Parkway." Broderick says these "made it clear to Broderick and to all prospective buyers that a specific portion of Broderick's private property has been designated and will be used for a public purpose—Douglas Parkway right-of-way."

Broderick also points to Waukee's other construction on and around the property. For example, Broderick points out that Waukee previously extended trunk sanitary sewer lines across Broderick's property—aligning them with the planned Douglas Parkway right-of-way. And Waukee intends to grade a portion Broderick's land to extend Douglas Parkway to the west. Since Douglas Parkway now ends to the east of Broderick's land, the result would be a gap in the roadway—right where Broderick's land is located.

Finally, Broderick points to a letter from Hubbell Land Development (Hubbell). The letter identifies "Douglas Parkway" as a factor "that limit[s] the amount of developable acres and ultimately the price a developer could pay" for Broderick's property. The letter states:

> Although we have very limited information currently regarding the Douglas Parkway expansion, it is typical for the developer to pay for road expansions through their development. There may be [c]ity dollars put into this road, but at this time it is an unknown, so we have to assume worst case scenario and that the developer would be responsible for this cost.

As Waukee points out, though, it "has made no final decision and taken no final action either to extend or not to extend any portion of Douglas Parkway onto Broderick's tract" and "has not approved any permanent or continuing regulations

---

[3] These plats were recorded with the Dallas County Recorder, pursuant to Iowa Code section 6B.35(1).

or restrictions relating to a future extension of Douglas Parkway that restrict Broderick's use of its tract." Its acquisition plats and placement of trunk sanitary sewer lines show only a "possible location of a *future* extension of Douglas Parkway for reference purposes in drawings" related to the city park and public high school being developed to the west. And, ultimately, there may "never be a future extension of Douglas Parkway onto Broderick's tract," argues Waukee.

On this record, we agree with Waukee. Broderick has shown no "permanen[t] . . . government action" by Waukee that definitively establishes the future placement of Douglas Parkway. *See id.* Moreover, despite whatever plans Waukee may have, Douglas Parkway may never be expanded.

And, ultimately, Broderick has only shown evidence of city planning. But city planning alone does not constitute a taking. *Allen Fam. Corp. v. City of Kansas City*, 525 F. Supp. 38, 41 (W.D. Mo. 1981) ("To impose liability upon a city for mere planning activities would undoubtedly inhibit important and necessary governmental functions."); *Dock St. Seafood, Inc. v. City of Wildwood*, 47 A.3d 785, 793 (N.J. Super. Ct. Law Div. 2011) ("Just because a government plans to take a property, its plans alone ordinarily do not constitute such a taking."); *NBH Land Co. v. United States*, 576 F.2d 317, 319 (Ct. Cl. 1978) ("[A] threat of condemnation is not a taking." (citation omitted)).

We also note that, so far as the record shows, Waukee's acts have not yet actually affected Broderick's use of the property. *See Kingsway Cathedral*, 711 N.W.2d at 10 (citation omitted) ("[S]ome acts done by government agencies . . . which affected but did not destroy or prevent all use of the affected property have been held to be takings . . . ."). As the letter from Hubbell shows, it is possible

Waukee's actions will impact Broderick's future efforts to develop or sell the property. However, our record does not show that Broderick has submitted a plan to Waukee for approval of any development. Nor does the record show that Waukee denied Broderick the right to develop its land in any way. *See Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980) (holding that a challenge to the application of a zoning ordinance was not ripe for review when the property owners had not yet submitted a plan for development of their property*), abrogated on other grounds by Lingle v. Cheveron U.S.A. Inc.*, 544 U.S. 528, 531 (2005); *see also Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) ("[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168 (2019).

In short: Broderick has not shown that Waukee's acts give it even a limited right to use the land. *Cf. Servitude*, *Black's Law Dictionary*. Nor has Broderick shown that—so far—Waukee has inhibited Broderick's use of the land in any continual or permanent way. *See Kingsway Cathedral*, 711 N.W.2d at 10. So, like the district court, we find "[t]he record fails to sustain any present cause of action related to any servitude." And so the present record does not support a takings claim.

### B.  Uneconomical Remnant

Broderick also asserts that Waukee "has created an uneconomical remnant and established a servitude upon the property thereby establishing that there has

been a taking." But Broderick does not provide authorities to support a separate "uneconomical remnant" theory. So we decline to treat it as an adequate ground for reversal. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

In any event, we believe the district court resolved this issue properly. "[A]n 'uneconomical remnant' is a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property, where the acquiring agency determines that the parcel has little or no value or utility to the owner." Iowa Code § 6B.54(8). Like the district court, we find "[i]n the absence of a present 'taking' by [Waukee], it is impossible for [Broderick] to prove that an 'uneconomical remnant' has been created." *See Johnson Propane, Heating & Cooling, Inc. v. Iowa Dep't of Transp.*, 891 N.W.2d 220, 224 (Iowa 2017).

## IV. Conclusion

Broderick has not shown the district court erred by granting summary judgment to Waukee. We affirm.

**AFFIRMED.**