# IN THE COURT OF APPEALS OF IOWA

No. 21-0908
Filed January 25, 2023


**CHRIST VISION, INC.,**
    Plaintiff-Appellant,

**vs.**

**CITY OF KEOKUK,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Lee (South) County, John M. Wright and Michael J. Schilling, Judges.


The owner of a historic church challenges summary judgment rulings in favor of the city, which demolished the dilapidated building. **AFFIRMED.**


John Q. Stoltze of Stoltze Law Group, P.L.C., Des Moines, for appellant.

Patrick J. O'Connell and Daniel M. Morgan of Lynch Dallas, P.C., Cedar Rapids, for appellee.


Considered by Bower, C.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Judge.**

Christ Vision, Inc. (Christ Vision) owned a historic Unitarian Church in Keokuk.[1]



---

[1] One of the church's founding members was U.S. Supreme Court Justice Samuel Freeman Miller. Michael A. Ross, Justice of Shattered Dreams: Samuel Freeman Miller and the Supreme Court during the Civil War Era (Conflicting Worlds: New Dimensions of the American Civil War), at 256 (2003). Justice Miller was one of the "dominant personalities" of the post-Civil War Court. William H. Rehnquist, Centennial Crisis: The Disputed Election of 1876, at 218 (2004). He wrote "twice his share of opinions" on questions of constitutional law. *Id.* at 155; *see, e.g.*, *Slaughter-House Cases*, 83 U.S. 36 (1872); *Bradwell v. Illinois*, 83 U.S. 130 (1872). Justice Miller's family held a funeral service for him at the church following his death. Ross, at 256.

But the church fell into disrepair.



After years of wrangling with Christ Vision over the church's deteriorating condition, the city persuaded the district court to declare the building to be a nuisance. Christ Vision did not challenge that declaration. The court also ordered the owner to work out a plan with the city for scheduling repairs. If the owner and the city did not agree by March 2017, Keokuk could abate the nuisance or demolish the church. Keokuk received no abatement plan from Christ Vision. So, after giving notice to the owners, Keokuk demolished the building.

Christ Vision then sued, contending the city took the church without due process or just compensation in violation of the Iowa Constitution. The owner further claimed that the city trespassed onto the grounds and converted personal property from inside the church. Keokuk successfully moved for summary judgment. Christ Vision now appeals.

While we find a flaw in the district court's analysis of inverse condemnation, we agree with the city that the claim lacks merit. Because Christ Vision did not generate a genuine issue of material fact on any of its claims, summary judgment was proper.

## I. Facts and Prior Proceedings

Built in 1876, the former Unitarian Church was "an inspirational, important, and iconic Keokuk landmark."[2] But by 2005 the church was dilapidated. That July, the city sent a letter to the church's owner—Christ Vision, Inc.—asking the owner to address deteriorating brick corners and falling moldings.

Christ Vision took no action for three years. So the city declared the building "unsafe to occupy" and posted a notice on the church in 2008. Keokuk informed Christ Vision that "[w]henever such notice is posted, no person shall remain in or enter any building that has been so posted except to enter for repair or demolish or remove such building under permit. . . . Any person violating this subsection shall be guilty of a misdemeanor." By 2011, the city sent letters to Christ Vision suggesting the church be razed. The city informed the owner that Keokuk was taking bids from demolition businesses.

Over the years, two Christ Vision representatives—Melanie Wells and Christopher Dailey—spoke with city officials about plans to save the church. But none of the plans had funding. In 2014, Dailey and others removed windows and other items from the church despite the notice. Dailey told the city he removed the windows because Christ Vision was planning to re-roof the church and did not want them damaged. A district court ordered the church items be stored on city property. The items were returned to the church that November.

---

[2] The district associate court included this description in its nuisance ruling.

By December 2016, Christ Vision had made no repairs.[3] The owner's failure to address the church's structural issues for five years took a toll on the building. The church now had gaping holes in the roof; fallen plaster and bricks; depressions in the floor; water in the basement; and an assortment of detached boards, moldings, and other debris scattered throughout the building. Keokuk filed a municipal infraction against Christ Vision, asserting the church's deteriorating structure was a nuisance as defined by its municipal code.[4] After a month-long hearing involving "a substantial amount of witness testimony and documentary evidence," the district associate court agreed with the city. The court found that the church's hazardous condition made it a nuisance and ordered abatement.

To abate, the court gave three options. First, Christ Vision could repair the church as specified by the city, including—at minimum—replacing the roof, securing parts of the church that were falling apart, and fixing "any hazardous conditions with the structure that make it unsafe to occupy" as specified by Keokuk. Second, the owner could demolish the church. Or third, Christ Vision could deed the property to Keokuk or another party approved by the city. The court directed the owner to create a written abatement plan and timeline, subject to the city's

---

[3] In affidavits, both Wells and another Christ Vision representative, David Romain, swore they were only allowed in the church with city supervision as of December 2016. Wells alleged Keokuk refused to provide such supervision. And Romain asserted the city only allowed him on the property to mow the lawn.

[4] The municipal code defined nuisances as "[w]hatever is injurious to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property." Keokuk Municipal Code § 5.24.020. "dangerous buildings or structures" was one example of a nuisance listed by the city code. *Id.* § 5.24.020(8).

approval. If the parties did not reach a written accord by March 2017 or another agreed-upon time, Keokuk could "take any action needed to abate the conditions."

When March rolled around, Christ Vision had not yet proposed an abatement plan and had not asked the city for an extension. Even after the owner missed its deadline, the city's attorney wrote to Christ Vision's attorney asking for an abatement plan in April and again in June. The city never heard back. Keokuk notified Christ Vision's attorney of its intent to demolish the church. The city posted the same notice on the church's front door.

In October 2017, Keokuk's city council approved a contract with the lowest-bidding demolition company for the church's destruction. Before this, the city was presented with some abatement ideas by Romain and third parties either by email or at city council meetings. But Romain and the others failed to prove they had funding for these ideas and they were not approved by the city. Christ Vision still had not sent a plan or schedule to the city for approval and had neither repaired nor sold the building.

Finally realizing the need for urgent action, in November Christ Vision sought to enjoin Keokuk from demolishing the church. The district court granted a temporary injunction. The city challenged that ruling, contending improper notice and service. The court dissolved the injunction less than a month later. Christ Vision then applied for another temporary injunction. The court entered an order in January 2018, scheduling a hearing for the end of the month. But Keokuk began demolishing the church before the hearing.[5]

---

[5] In the demolition process, Keokuk also removed asbestos from the building for safety purposes.

Christ Vision launched this lawsuit two years later, alleging Keokuk took its property in violation of the Iowa Constitution. The owner further claimed that the city trespassed onto its property and caused damage. And that Keokuk converted Christ Vision's personal property.

The city moved for summary judgment. Christ Vision resisted. In its statement of proceedings, the court noted that Christ Vision admitted missing the March 2017 deadline. But the court also recognized that Keokuk refused entry into the church due to its unsafe condition and "did take personal property from the building." The court then granted the motion as to Christ Vision's first two claims but denied it for the conversion claim.

Keokuk moved to reconsider the conversion claim. And Christ Vision moved to amend, enlarge, and reconsider the first two claims. The court denied both motions. Following further discovery, the city again moved for summary judgment on the conversion claim. This time, the district court granted the motion.

Christ Vision now appeals, resurrecting all three claims.

## II. Scope and Standard of Review

We review grants of summary judgment for correction of legal error. *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 71 (Iowa 2004). Like the district court, we view the record in the light most favorable to the nonmoving party, here Christ Vision. *See Bill Grunder's Sons Const. Inc. v. Ganzer*, 686 N.W.2d 193, 196 (Iowa 2004). If the district court correctly applied the law and there was no genuine issue of material fact, we affirm. *Id.* We consider an issue to be material if its determination affects the suit's outcome. *Id.* And the dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

"[W]e are obliged to affirm an appeal where any proper basis appears in the record for a trial court's judgment, even though it is not one upon which the court based its holding." *Grefe & Sidney v. Watters*, 525 N.W.2d 821, 826 (Iowa 1994); *accord Gen. Motors Acceptance Corp. v. Keil*, 176 N.W.2d 837, 842 (Iowa 1970) ("Many a learned court is occasionally right for the wrong reason . . . .").

### III. Analysis

### A. Constitutional Claims

Christ Vision first argues the district court erred in granting summary judgment on its constitutional claims contesting Keokuk's actions in abating the church's dangerous condition. The owner contends the city took its property without just compensation, seeking damages under a claim of inverse condemnation.[6] Christ Vision also claims the city violated its due process rights.

#### 1. *Taking without just compensation*

Under the Iowa Constitution, a government may not take private property for public use without just compensation. *See* Iowa Const. Art. I, § 18.[7] As noted, Christ Vision's takings claim is grounded on inverse condemnation. In issuing summary judgment, the district court defined inverse condemnation as "[c]ondemnation of property near a parcel so as to cause the parcel to lose much

---

[6] Christ Vision invoked the concept of eminent domain in the district court. But on appeal, the owner appears to recognize that theory does not apply because the city did not pursue condemnation proceedings.

[7] The federal constitution has a similar takings provision. *See* U.S. Const. Amend. V. We find case law interpreting the federal provision persuasive in our analysis because of this similarity. *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 9 (Iowa 2006).

of its value." Based on that definition, the court found Christ Vision's theory of inverse condemnation was inapplicable.

Trouble is, the district court's definition of inverse condemnation—even if accurate in certain situations—was too narrow. Inverse condemnation is "a generic description applicable to all actions in which a property owner, in the absence of a formal condemnation proceeding, seeks to recover from a governmental entity for the appropriation of his property interest." *Kingsway Cathedral*, 711 N.W.2d at 9 (citation omitted). When deciding a claim of inverse condemnation, Iowa courts employ a three-part test. First question: is there a constitutionally protected private property interest at stake? *Id.* (citation omitted). Second, has the government "taken" that interest for public use? *Id.* And third, has the property owner been justly compensated for the taken interest? *Id.*

In the district court, citing *City of Eagle Grove v. Cahalan*, 904 N.W.2d 552, 561 (Iowa 2017), the city urged that Christ Vision did not retain a protected property interest in the building because the owner did not act to abate the nuisance. On appeal, the city changes tack. Switching from the first to the second step in the inverse condemnation test, Keokuk argues the demolition was not a taking because it fell within the city's police powers. *See Kelley v. Story Cnty. Sheriff*, 611 N.W.2d 475, 482 (Iowa 2000) (finding damage caused to Kelley's property by the officers executing an arrest warrant was a reasonable exercise of police power and not a taking under the Iowa Constitution).

What is a taking? Courts recognize two kinds. First, a direct taking involves the government outright seizing property or physically invading the property so that the owner suffers a "practical ouster" of possession. *Lingle v. Chevron U.S.A.,*

*Inc.*, 544 U.S. 528, 537 (2005).  Second, a regulatory taking involves the government overstepping the bounds of its police powers.  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992).  A per se regulatory taking can arise from "a permanent physical invasion of property," or a "regulation that denies the owner all economically beneficial ownership."  *City of Eagle Grove*, 904 N.W.2d at 562 (quoting *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 545 (Iowa 2017)).   A third form of regulatory taking can be found by balancing three factors from *Penn Central Transportation Company. v. New York City*, 438 U.S. 104 (1978).[8]  *Id.* at 563.

In its briefing, Christ Vision does not specify which kind of taking allegedly occurred.  Instead, the owner presents a diffuse claim that the city's nuisance action amounted to an illegal taking.  "Iowa has not yet considered whether enforcing a nuisance law could constitute a regulatory taking."  *ChemSol, LLC v. City of Sibley*, 386 F. Supp. 3d 1000, 1027 (N.D. Iowa 2019).  But in *City of Eagle Grove*, our supreme court held that the state's exercise of its related police powers over abandoned property did not constitute a taking.[9]  904 N.W.2d at 561.  That was true even though Eagle Grove's action denied the owner of "all economically beneficial or productive use" of the property.  *Id.* at 563−64.

---

[8] The *Penn Central* factors include (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action."  *Penn Cent.*, 438 U.S. at 124.

[9] The supreme court has taken some criticism for its analysis in *Eagle Grove.  See* N. William Hines, *Is Iowa Code Section 657A.10A A Regulatory Step Too Far Under Federal Takings Law?*, 103 Iowa L. Rev. Online 161, 166 (2019) (contending *Eagle Grove* misread the nuisance exceptions to the "total taking" rule in *Lucas*, 505 U.S. at 1031).

Like the plaintiff in *Eagle Grove*, Christ Vision had a constitutionally protected interest in rundown property. But under the Keokuk municipal ordinance, Christ Vision did not have the right to maintain a public nuisance. *See Easter Lake Ests., Inc. v. Polk Cnty.*, 444 N.W.2d 72, 76 (Iowa 1989) ("[A] person has no vested property right in a nuisance"); *see also Hancock v. City Council of City of Davenport*, 392 N.W.2d 472, 475 (Iowa 1986) (recognizing city's authority to declare and abate nuisances under its police powers through enforcement of reasonable city ordinances). As the record shows, Keokuk demolished the church in compliance with an unchallenged court order finding the building was a nuisance under the municipal code. In doing so, the city did not take anything. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 492 n.20 (1987) (noting that since owners have no right to use their property to create a public harm, the government takes nothing when it asserts power to enjoin a nuisance). Thus, Christ Vision's claim fails under steps one and two of our inverse condemnation test.

Bottom line, Keokuk could enforce its nuisance law without compensating Christ Vision for its losses stemming from that enforcement. Thus, the city is entitled to summary judgment on the owner's claim of inverse condemnation.

### 2. Due Process

Under the Iowa Constitution, "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. "[D]ue process is flexible and calls for such procedural protections as the particular situation

demands*." Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).[10] Despite this flexibility, "[p]rocedural due process requires at the very least, notice and opportunity to be heard in a proceeding that is adequate to safeguard the right for which the constitutional protection is invoked." *Endress v. Iowa Dep't of Hum. Servs.*, 944 N.W.2d 71, 77–78 (Iowa 2020) (citations and internal quotation marks omitted). Christ Vison alleges Keokuk destroyed the church without giving the owner a chance to be heard.

The district court found Keokuk's authority to demolish the church came from the December 2016 order. That order came after Christ Vision was afforded notice and opportunity to present evidence at a hearing on whether to declare the church a nuisance. Christ Vision concedes that procedural history. But it insists the December 2016 order did not automatically authorize demolition of the church once the March 2017 deadline was missed. Christ Vision claims the city needed to follow the process in Iowa Code chapter 657A (2016).

Keokuk counters that abating the nuisance by demolishing the building followed its municipal code and state law. *See* Iowa Code § 364.22 (2019). We agree. The December 2016 order did not require the city to follow the steps in chapter 657A for removing a public nuisance. And that chapter is not the sole procedure for abating a dangerous building. *See id.* § 657A.11(2) ("This chapter does not prevent a person from using other remedies or procedures to enforce building or housing ordinances or to correct or remove public nuisances."). Thus,

---

[10] Christ Vision does not argue we should interpret its state due process claim differently than we would a similar federal challenge. Thus, we may look to federal case law in our analysis. *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 566 (Iowa 2019).

Keokuk could address the nuisance as it saw fit. *See City of Iowa City v. Iowa Dist. Ct.*, 456 N.W.2d 178, 180 (Iowa 1990).[11]

Christ Vision also claims Keokuk violated due process by demolishing the church after the owner sought a temporary injunction. But for an injunction to be in effect, it must be granted. *See* Iowa R. Civ. P. 1.1501 ("An injunction may be granted as part of the judgment; or may be granted by order at any prior stage of the proceedings, and is then known as a temporary injunction."). The court had not granted a new injunction before demolition. Thus, Keokuk did not violate Christ Vision's due process rights in moving forward.

## B. Tort Claims

### 1. Trespass

Christ Vision next claims that the district court erred in concluding that Keokuk did not trespass onto church property. Trespass means to wrongfully interfere with another's possessory rights in a property. *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 301 (Iowa 1994), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111, 119 (Iowa 2004). In this context, a trespasser is someone who intentionally enters land in the possession of another

---

[11] Christ Vision further claims summary judgment was improper because Keokuk did not follow proper procedure in demolishing the church. But the owner did not appeal the order authorizing demolition. So we do not entertain this collateral attack. *See Gail v. W. Convenience Stores*, 434 N.W.2d 862, 863 (Iowa 1989).

In yet another iteration, Christ Vision claims the city violated its due process rights by not giving its members "the ability to abate" the nuisance. Christ Vision emphasizes a district court finding that Keokuk "did refuse entry in to the church due to its unsafe condition." But the city's designation of the church as unsafe to occupy included the chance to seek an administrative appeal and Christ Vision did not avail itself of that opportunity. This appeal is too late to address the unsafe-to-occupy designation.

without consent or a reason to rightfully be there. *Id.*; *Iowa State Highway Comm'n v. Hipp*, 259 Iowa 1082, 1089 (1966) (citations omitted).

Christ Vision asserts Keokuk wrongfully entered the property to demolish the church. The owner also objects to the city's removal of church materials, including asbestos. And it contends the city violated the "text and spirit" of the December 2016 order by not working with Christ Vision to preserve the historic church. The district court rejected the claim because the order authorized the city to abate.

We agree with the district court. Christ Vision did not challenge the court's authority to permit the city to demolish the building once the owner missed the abatement deadline. And "conduct otherwise a trespass is often justifiable by reason of authority vested in the person who does the act." *State v. Van Rees*, 246 N.W.2d 339, 343 (Iowa 1976) (quoting 75 Am. Jur. 2d *Trespass* § 43, at 38 (1974)). Because Christ Vision missed the deadline, Keokuk could rightfully be on the property to abate.

Nothing in the December 2016 order—whether text or spirit—imposed a duty on the city to help preserve the church. To the contrary, the order placed obligations on the owner. Because Christ Vision failed to meet those obligations, Keokuk had no legal responsibility to assist the owner in obtaining funds or conducting repairs to the church.[12]

---

[12] Christ Vision also asserts that the city trespassed by preventing the owners from entering the church to make repairs. But as noted, Christ Vision did not appeal the unsafe-to-occupy notice. So city officials were not wrongfully on the property when Dailey was ordered to return items he'd taken from the church or when Keokuk required individuals to be supervised by city officials while on the property. *Van Rees*, 246 N.W.2d at 343.

### *2. Conversion*

Finally, Christ Vison contests summary judgment on its conversion claim. To commit conversion, an individual must exercise "wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Lewis v. Jaeger*, 818 N.W.2d 165, 188 (Iowa 2012). This control "must amount to a serious interference with the other person's right to control the property." *Id.*

Christ Vision argues it had a possessory right to personal property within the church. It claims that Keokuk interfered with that right by demolishing the church with the property still inside. And further contends that the city did not allow the owner to remove any personal property while demolition was pending. Christ Vision points to the district court's statement that the city "did take personal property from the building."[13]

The district court found no evidence that the city denied Christ Vision access to the building to remove personal property once the March 2017 deadline passed and demolition was pending. The record supports that finding. Conversion does not occur "where the property was rightfully in the possession of the defendant." *Williamson v. Williamson*, No. 11–0830, 2013 WL 1223840, at *10 (Iowa Ct. App. Mar. 27, 2013) (citations omitted). Under the December 2016 order, Keokuk could

---

[13] Christ Vision also claims Keokuk let "others" take property from the church or gave it to them. And alludes in its reply brief to those others being the demolition contractors. Christ Vision fails to develop facts to support this claim. Wells did state in her deposition that she had a picture of the demolition contractors hauling church doors and decorative stones away. But this photo is not in the record. And even assuming such items were stolen, they would have been fixtures of the building, still real property subject to the abatement order. The district court reached that same conclusion when Christ Vision brought a replevin action against the demolition contractors.

demolish the church, including any personal property still inside, once Christ Vision failed to meet its deadline.

True, Dailey was once ordered to return items he removed from the church. But that was two years before the abatement order. And three years before Keokuk began demolition. Christ Vision points to no evidence that it requested access to the church to remove personal property once it knew demolition was imminent or that Keokuk denied access. *See McCray v. Carstensen*, 492 N.W.2d 444, 445 (Iowa Ct. App. 1992) (finding the defendant's action of locking plaintiffs out of premises was not "sufficient interference with plaintiffs' personal property" as the "defendants were willing to allow plaintiffs to access the premises for the purpose of removing their property"). Christ Vision did not generate a genuine issue of material fact on its conversion claim.

**IV. Conclusion**

Having considered all of the claims raised on appeal, whether specifically mentioned in this opinion or not, we affirm the district court's rulings on summary judgment.

**AFFIRMED.**